## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LISA CAPORICCI,**

      **Plaintiff,**

**v.**                                        **Case No: 8:14-cv-2131-T-36EAJ**

**CHIPOTLE MEXICAN GRILL, INC.,**

      **Defendant.**

_____/

## <u>O R D E R</u>

This matter comes before the Court upon the Defendant's Motion for Summary Judgment (Doc. 41) to which Plaintiff has responded in opposition (Doc. 45), and the parties' Joint Stipulation of Facts (Doc. 51).  The Court, having considered the parties' submissions and being fully advised in the premises, will now GRANT the Motion.

**I.**      **Facts**[1]

Plaintiff Lisa Caporicci alleges that her former employer, Chipotle Mexican Grill, Inc., fired her based on her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*., and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01, *et seq*., and in retaliation for her exercise of rights under Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*.   The relevant facts follow.

---

[1] Plaintiff's response is largely devoid of citations to the record. The Court declines to consider any "fact" that is not accompanied by a record citation.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials").

Plaintiff has a long history of treatment for bipolar disorder.   Doc. 41-1, Exh. A "Pl. Dep." at 36.  Before she began taking medication to treat her condition, Plaintiff experienced "depression and mania."  *Id*. at 37-38.  Plaintiff does not suffer from these "extreme highs and lows" when she is taking medication, but she continues to experience panic attacks. *Id*. at 36-38.

Plaintiff began working for Chipotle as a crew member on July 20, 2012.  Doc. 51 at ¶¶ 1-2.  Chipotle is a chain of "fast casual" restaurants that specializes in Mexican fare, and Plaintiff worked at Chipotle's South Tampa location.  *Id.*; Doc. 41-3 at ¶¶ 4-5.  In April 2013, Plaintiff informed the manager at the South Tampa location, Jared Miesel, that she was taking medication for her bipolar disorder.  Pl. Dep. at 63-64.  Plaintiff did not explain which medications she took, she did not detail any side effects, and she did not mention that the medications could cause something negative to happen at work.  *Id*. at 65.  Miesel's reaction was "neutral," and he did not ask any questions.  *Id*.

 According to Plaintiff, Miesel treated all employees in the same way, and he never reprimanded her.   *Id*. at 70, 83.  One of Plaintiff's coworkers testified that Plaintiff "was really good at her job and the customers seemed to like her."  Doc. 41-18 at 15.  By May 2013, Plaintiff was being "watched carefully for a promotion."  Pl. Dep. at 150, 152.  Although being monitored for a promotion was stressful, Plaintiff "was able to do it" without triggering panic attacks because she "was more excited than not."  *Id*. at 152.

On May 30, 2013, Plaintiff reported to Sandra Weeks, an advanced registered nurse practitioner who treated Plaintiff's bipolar disorder, that she was crying at work and having panic attacks, and that she had to be taken off shifts.  *Id*. at 98-99; Doc. 41-16 at 1.  Plaintiff testified that she was having panic attacks every day, sometimes at work, but "[t]hey weren't long."  Pl. Dep. at 99-100.  When the attacks happened at work, she would have to calm herself down by going

into the storage room to "take a minute."   *Id.* at 100.  She explained, "I can work through it, it's just not fun."  *Id.*

Nurse Weeks discontinued one of Plaintiff's medications and started Plaintiff on Saphris, a new medication.  Doc. 41-16 at 2.  Nurse Weeks' treatment notes from May 30, 2013, indicate that she recommended "FMLA [leave] until Mon. June 3."  Doc. 41-16 at 2.  That same day, Nurse Weeks faxed a letter to Miesel requesting FMLA leave for Plaintiff as follows:

> This is to verify our telephone conversation earlier today regarding [Plaintiff] needing to take FMLA today through Monday, June 6, secondary to severe panic attacks.  At this time, her medication is being titrated, and I hope that she will not need further medical leave.  I expect that a brief period of time for respite, along with changes in her medication will be sufficient.

Doc. 41-15 at 2.  Plaintiff testified that when Miesel received the fax, he pulled it out of the printer, laughed, and threw it away without reading it.  Pl. Dep. at 86-87.  Plaintiff told Miesel that she was having some anxiety and would like to take some time off.  *Id.*

During her deposition, Plaintiff initially testified that she was denied time off.  *Id.* at 89.  However, Plaintiff later agreed that Chipotle's records stated that she did not work on May 30, May 31, June 1, June 2, or June 3, and she testified that Miesel honored her request for leave.  *Id.* at 104-06, 175; Doc. 41-4 at 4.  When questioned if there was other leave that she requested and did not receive, Plaintiff answered, "I don't know."  Pl. Dep. at 175.

During her time off work between May 30, 2013 and June 3, 2013, Plaintiff started taking the new medication.  Doc. 51 at ¶ 12.  The Saphris made her feel "a little tired" and it " knock[ed] me out at night."  Pl. Dep. at 112.  Plaintiff returned to work on June 4, 2013.  *Id.* at 107.

Plaintiff was fired four days later, on June 7, 2013.  *Id.* at 155.  That day, Plaintiff took the Saphris in the morning because her provider told her to start taking the medication twice a day.  *Id.* at 111, 155.  Plaintiff clocked in for her shift at 11:50 a.m.  Doc. 41-4 at 4.  Approximately

thirty minutes into her shift, Plaintiff began to feel dizzy and disoriented.  Doc. 51 at ¶ 5.  The parties agree that Plaintiff "was very slow, messed up orders, and was incoherent."  *Id.* at ¶ 6; Pl. Dep. at 117-18.  Plaintiff's coworkers asked her what was wrong.  Pl. Dep. at 118.  Plaintiff told them that she was on a new medication and "it's messing with me right now."  *Id.*

Miesel noticed Plaintiff's condition and took her off the serving line.  *Id.* at 116, 119.  Plaintiff "tried to explain to him what was going on."  *Id.* at 119.  Miesel told her, "it's fine" and to go home and get some rest.  *Id*. at 119-20.  Miesel and Plaintiff did not have any additional discussion.  *Id*. at 120.  Plaintiff clocked out at 12:51 p.m.  Doc. 41-4 at 4.

Plaintiff initially testified that, immediately after she got home, Miesel called and said she was fired due to being intoxicated.  Pl. Dep. at 120.  Plaintiff later testified that she had two phone calls with Miesel.  *Id.* at 193.  During the first phone call, Miesel "seem[ed] more empathetic."  *Id.*  Plaintiff told him that she was on medication, she told him that she believed her behavior was a side effect of her medication, and she "was trying to plead my case."  *Id.* at 194.  Although Miesel listened and seemed to want to offer her a second chance, he called back ten minutes later and told her, "I'm really sorry, but you just looked like you were on some [expletive], so you're fired and you are not rehirable at Chipotle."  *Id.* at 194-96.

Chipotle's employee handbook includes a "Drug and Alcohol Policy," which provides, in relevant part:

> No employee shall report to work or be at work under the influence of alcohol, drugs, or controlled substances, or with any detectable amount of alcohol, drugs, or controlled substances in his or her system.

> Employees who must use medically prescribed or over-the-counter drugs that may adversely affect their ability to perform work in a safe manner must notify their Manager prior to starting work. The Manager will decide if the employee can remain at work and/or if work restrictions are necessary. The employee may be required to take a medical leave of absence or disability leave for the duration of the medication.

Doc. 41-22 at 1-2.

On June 25, 2013, Miesel sent an email to Kate Brown,  responding to Brown's request for details about Plaintiff's termination.  Doc. 41-23; Doc. 51 at ¶ 9.  Miesel explained the "final incident" leading to Plaintiff's termination as follows:

> The final incident was the employee arriving late to work and appeared to be under the influence of some kind of medication. I had face to face talks with her regarding performance previously, but with a zero tolerance for inebriation of any kind there had been no prior incident.
>
> It came to my attention during peak hour when she attempted to roll a burrito and basically flipped it upside down releasing the contents into a foil, she then placed the foil and tortilla (still upside down) into a bowl and slid it to the expeditor. I calmly sent her home since making a scene in front of a peak hour line of customers would have been a terrible idea. I then called and terminated her later in the afternoon.

Doc. 41-23.[2]

On June 17, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  Doc. 1-1 at 2.  On June 12, 2014, the EEOC issued a Letter of Determination concluding that "the evidence obtained during the investigation establishes that there is reasonable cause to believe that Respondent terminated Charging Party due to her disability in violation of the ADAAA."  *Id.* at 4.  On July 28, 2014, the EEOC issued a Notice of Right-to-Sue.  *Id.* at 7.

Plaintiff filed the instant action on August 29, 2014.   Doc. 1.   On September 3, 2014, Plaintiff filed an Amended Complaint.  Doc. 7.  Plaintiff asserts four claims: interference with her

---

[2] Plaintiff raises no challenge to the admissibility of Miesel's June 25, 2013, email.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

FMLA rights (Count I), retaliation for exercising her FMLA rights (Count II), disability discrimination in violation of the ADA (Count III), and disability discrimination in violation of the Florida Civil Rights Act (Count IV).  Chipotle moves for summary judgment on each count.  Doc. 41.

## II.    Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48.  A fact is "material" if it may affect the outcome of the suit under governing law.  *Id.* at 248.  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.

6

III.    **Discussion**

**A.  FMLA**

The FMLA creates two distinct claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (internal quotation marks omitted); 29 U.S.C. § 2615(a)(1)-(2).  Both claims "require the employee to establish that he qualified for FMLA leave." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1167 (11th Cir. 2014).  Chipotle maintains that Plaintiff has failed to make the threshold showing that she was qualified for FMLA leave.  For the reasons explained below, the Court agrees.

The FMLA provides certain protections for "an eligible employee," including 12 weeks of leave for a serious health condition.  29 U.S.C. § 2612.  "Eligible employee" means a person "who has been employed – (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previously 12-month period."  29 U.S.C. § 2611(2)(A).  The determination of FMLA eligibility must be made "as of the date the FMLA leave is to start."  29 C.F.R. § 825.110(d); *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).

Plaintiff worked for Chipotle for approximately 10 months and three weeks.  Her first day of employment was July 20, 2012, and her last day of employment was June 7, 2013.  Doc. 51 at ¶ 1.  As a result, Plaintiff was not employed "for at least 12 months" at the time she was fired.  29 U.S.C. § 2611(2)(A).

Although Plaintiff concedes that she was not employed for 12 months, she raises two points. First, Plaintiff argues that the FMLA protects employees who are not yet eligible for FMLA leave if they "put their employers on notice of a post-eligibility leave request." *Pereda*, 666 F.3d at 1275. While that is a correct statement of law, Plaintiff cites no record evidence that would support a finding that she requested post-eligibility leave. Instead, the record indicates that Nurse Weeks faxed Miesel a request for leave through June 6, 2013, a date well within the pre-eligibility period. Doc. 41-15 at 2.

Alternatively, Plaintiff argues that Chipotle is equitably estopped from denying Plaintiff's FMLA eligibility. The Eleventh Circuit has not determined whether the doctrine of equitable estoppel applies in the FMLA context. *Cowman v. Northland Hearing Ctrs., Inc.*, 628 F. App'x 669, 672 (11th Cir. 2015). Rather, the court has found it unnecessary to decide the issue when the plaintiff fails to establish an essential element of an equitable-estoppel claim. *Id.* (citing *Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013)). Because Plaintiff fails to establish the requisite elements, this Court will likewise assume, without deciding, that equitable estoppel applies in the FMLA context.

A party seeking to invoke equitable estoppel must establish that:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Dawkins*, 733 F.3d at 1089 (internal quotation marks omitted). Assuming that Miesel falsely represented that Plaintiff was covered by the FMLA, Plaintiff cites no evidence suggesting that Miesel knew that she was *not* an eligible employee. Likewise, Plaintiff cites no evidence to support an inference that Miesel intended for Plaintiff to rely on any representation. Most critically,

Plaintiff fails to explain how she detrimentally relied on any representation.  *Id.* ("[t]o show detrimental reliance, the plaintiff must generally show that the defendant's actions caused her to change her position for the worse").

Accordingly, even to the extent that the doctrine of equitable estoppel applies to Plaintiff's FMLA claims, she fails to establish the required elements.  Because Plaintiff is not "an eligible employee" under the FMLA, Chipotle is entitled to judgment as a matter of law on the FMLA interference and retaliation claims.  *Hurley*, 746 F.3d at 1169.  Chipotle's Motion for Summary Judgment is therefore granted on Counts I and II of the Amended Complaint.

### B.  ADA and FCRA

Plaintiff also brings claims for disability discrimination under the ADA and FCRA, which are assessed pursuant to the same framework.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  Because the relevant events took place after the ADA Amendments Act of 2008 ("ADAAA") became effective on January 1, 2009, the post-ADAAA version of the ADA governs.  *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014).

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of a disability in regard to . . . discharge of employees[.]"  42 U.S.C. § 12112(a).  In the absence of direct evidence of discrimination, Plaintiff's disparate-treatment claim is analyzed under the familiar *McDonnell Douglas* burden-shifting scheme.  *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).  To establish a *prima facie* case of disparate treatment, an employee must demonstrate that, at the time of the adverse employment action: (1) she had a disability, (2) she was a "qualified individual," and (3) the employer unlawfully discriminated against her because of the disability.  The burden then shifts to the employer to articulate a non-discriminatory reason for the challenged employment action.  If the employer

satisfies its burden, the employee may demonstrate that the employer's stated reason is a pretext for unlawful discrimination.  *Id.*  "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case").

Chipotle argues that Plaintiff is unable to satisfy the first and third elements of her *prima facie* case.  Chipotle also maintains that it had a non-discriminatory reason for Plaintiff's termination: her violation of Chipotle's Drug and Alcohol Policy, which prohibits an employee from being at work "under the influence of alcohol, drugs, or controlled substances."  Doc. 41-22 at 2.  For the reasons explained below, sufficient record evidence exists to support a finding that Plaintiff has a "disability" within the meaning of the ADAAA.  Nonetheless, Plaintiff fails to demonstrate that she was discriminated against because of her disability.

The implementing Regulations for the ADAAA clarify that its primary purpose "is to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). As a result, the definition of disability "shall be construed broadly in favor of expansive coverage." *Id.*  A "disability" is defined as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such impairment," or (3) "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "Major life activities" include concentrating, thinking, interacting with others, and working, as well as the operation of a major bodily function, such as neurological or brain function.  29 C.F.R. § 1630.2(i)(1)(i)-(ii).

The ADAAA emphasizes that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Further, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," including the effects of medication. 29 C.F.R. §1630.2(j)(1)(vi), (5)(i). At the same time, "the non-ameliorative effects of mitigating measures, such as negative side effects of medication . . . may be considered." 29 C.F.R. § 1630.2(j)(4)(ii). In light of these principles, the Regulations specifically provide that "it should easily be concluded" that bipolar disorder "will, at a minimum . . . substantially limit brain function." 29 C.F.R. § 1630.2(j)(3)(iii).

Chipotle cites primarily pre-ADAAA case law and fails to address relevant evidence under the more lenient standards incorporated in the ADAAA's implementing Regulations. Absent a more focused challenge by Chipotle, and given the lenient standards of the ADAAA, the Court finds that Plaintiff raises a genuine issue of fact about whether she has a disability. The relevant inquiry is whether Plaintiff's bipolar disorder is substantially limiting when she is not taking medication. Plaintiff testified that she experienced depression and mania before she began taking medication. 29 C.F.R. § 1630.2(j)(1)(vi), (5)(i); Pl. Dep. at 37-38. Plaintiff also testified that she suffers from panic attacks even when taking medication, which make it "hard to work," and she reported to her provider that she had to be taken off shifts. Pl. Dep. at 98-100; Doc. 41-16 at 1. Additionally, Plaintiff required time off work to adjust her medications, and she experienced significant side effects from her new medication. Pl. Dep. at 104-05, 118. Consistent with the Regulations, the Court therefore finds that Plaintiff's bipolar disorder at least arguably causes

substantial limitations in the major life activities of working and brain function.   29 C.F.R. § 1630.2(j)(3)(iii).

Alternatively, Chipotle argues that Plaintiff fails to establish the third element of her *prima facie* case: that she was terminated "because of" her disability.   In the disparate-discipline context, a plaintiff typically satisfies her burden under the third element by showing that a non-disabled employee, or "comparator," engaged in a similar work rule violation but was treated more favorably.   *Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012).   A plaintiff may also offer evidence demonstrating that she did not violate the work rule at issue.   *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989).

Plaintiff offers no comparator evidence, and she does not dispute her violation of Chipotle's Drug and Alcohol Policy.   Instead, Plaintiff argues that Miesel fired her without first ascertaining whether Plaintiff was under the influence of *illegal* drugs, as opposed to experiencing side effects from Saphris, a prescription medication.   Although Plaintiff does not meaningfully elaborate on this point, the gist of her argument appears to be that, if Miesel fired Plaintiff due to conduct caused by medication side effects, that decision would be tantamount to firing Plaintiff because of her bipolar disorder.   Indeed, Miesel reported to Brown that he did fire Plaintiff because she was "under the influence of some kind of medication."   Doc. 41-23.

Courts are split on the question of whether a termination based on conduct related to, or caused by, a disability constitutes unlawful discrimination.   *See generally* Kelly Cahill Timmons, *Accommodating Misconduct Under the Americans with Disabilities Act*, 57 Fla. L. Rev. 187, 211-22 (2005) (reviewing majority and minority approaches).   The majority position, which includes courts in the Eleventh Circuit, holds that an employer may discipline or terminate an employee for workplace misconduct even when the misconduct is a result of the disability.   *E.g.*, *J.A.M. v. Nova*

12

*Se. Univ., Inc.*, No. 15-13883, ___ F. App'x ___, 2016 WL 1359255, at *4 (11th Cir. Apr. 6, 2016) (citing a Fourth Circuit case for the principle that misconduct related to a disability "is not itself a disability and may be a basis for dismissal" ) (internal quotation marks omitted); *Ray v. Kroger*, 264 F. Supp. 2d 1221, 1228-29 (S.D. Ga. 2003), *aff'd* 90 F. App'x 384 (11th Cir. 2003); *Howard v. Steris Corp.*, 886 F. Supp. 2d 1279, 1294-97 (M.D. Ala. 2012).   By contrast, other courts, including the Ninth Circuit, equate a discharge based on disability-related misconduct with an unlawful termination based on the employee's disabled status.   *E.g., Dark v. Curry County*, 451 F.3d 1078, 1084 (9th Cir. 2006) ("conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination"); *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1087 (10th Cir. 1997).

The EEOC's Enforcement Guidance provides that an employer may only discipline an employee for disability-related conduct "if the conduct rule is job-related and consistent with business necessity and other employees are held to the same standard."   Equal Employment Opportunity Commission, *Enforcement Guidance: The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities*, 2008 WL 4786697, at *9 (Sept. 25, 2008).[3]   Based on this guidance, at least one court has evaluated whether an employer's reason for firing the plaintiff was "job-related and consistent with business necessity," before concluding that the stated reason was sufficiently "non-discriminatory" under the *McDonnell Douglas* burden-shifting scheme.   *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 739-40 (6th Cir. 2015).

---

[3] The EEOC's Enforcement Guidance "is entitled to respect only to the extent that it has the 'power to persuade.'"   *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1313 (11th Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)).

Although the Supreme Court has not expressly resolved the split in authority, the Court discounted the minority position in *Raytheon Company. v. Hernandez*, stating: "To the extent that [Ninth Circuit] suggested that, because respondent's workplace misconduct is related to his disability, petitioner's refusal to rehire respondent on account of that workplace misconduct violated the ADA, we point out that we have rejected a similar argument in the context of the Age Discrimination in Employment Act."   540 U.S. 44, 55 n.6 (2003).   The Court further determined that the Ninth Circuit had improperly focused on whether the work policy in question was motivated by "business necessity."   *Id*. at 54.   The Court instead held that, where an applicant is denied employment based on a "neutral, generally applicable" work policy, the policy provides a sufficiently non-discriminatory reason for refusing to hire the applicant.   *Id*. at 55.

Based on *Raytheon* and the weight of case law in this Circuit, the Court finds that the majority position controls.   Although Plaintiff was arguably fired for disability-related misconduct – inebriation due to her medication – Chipotle asserts that this conduct violated the company's Drug and Alcohol Policy, which prohibits any employee from reporting to work or being at work "under the influence of alcohol, drugs, or controlled substances."   Doc. 41-22 at 22; Doc. 41-23. That prohibition is neutral and generally applicable, and therefore satisfies Chipotle's burden to produce a non-discriminatory reason for Plaintiff's termination.   *Raytheon Co.*, 540 U.S. at 55. Although the EEOC's Enforcement Guidance additionally counsels that an employer's policy must be "job-related and consistent with business necessity," the EEOC's guidance does not purport to address the specific burdens of production and proof under the *McDonnell Douglas* burden-shifting scheme.   Because the burden of producing a non-discriminatory reason is "exceedingly light,"   *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994) (internal quotation

marks omitted), the question of whether Chipotle's policy was job-related and consistent with business necessity is better left to the final step of the *McDonnell Douglas* inquiry.

Having articulated a non-discriminatory reason for Plaintiff's termination, the burden shifts to Plaintiff to demonstrate that Chipotle's stated reason for her termination is a pretext for unlawful discrimination. *Cleveland*, 369 F.3d at 1193. Plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (internal quotation marks omitted); *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1346 (11th Cir. 2000). For instance, Plaintiff may demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted). When an employer relies on the violation of a work rule, as in this case, a plaintiff may show pretext by submitting evidence demonstrating "(1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999).

Although Plaintiff bears the burden to demonstrate pretext, her argument on this point is cursory and devoid of legal support. *See* Doc. 45 at 12-13. Plaintiff emphasizes that the EEOC found that there was reasonable cause to believe Plaintiff was fired due to her disability. *See* Doc. 1-1 at 4. It is well-established that "EEOC findings are not binding with regard to subsequent discrimination suits in federal court." *Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 912 (11th Cir. 2013) (citing *Moore v. Devine*, 767 F.2d 1541, 1542–43, 1550–51 (11th Cir. 1985), *modified on reh'g*, 780 F.2d 1559, 1560, 1562–63 (11th Cir. 1986)). A district court conducts a

*de novo* review of a discrimination claim and is therefore "not required to defer or make reference to the EEOC determination." *Id.*

Second, as already stated, Plaintiff argues that Miesel failed to determine whether Plaintiff was using illegal drugs before firing her. While that fact is undisputed, it is not probative of pretext. As an initial matter, even if Miesel's investigation was flawed, a "ham-handed investigation," standing alone, is not sufficient to show pretext. *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1337-38 (11th Cir. 2015). Moreover, Miesel concluded that Plaintiff was "under the influence of some kind of medication," and therefore in violation of Chipotle's "zero tolerance" policy, which prohibited any employee from reporting to work or being at work "under the influence of alcohol, drugs, or controlled substances." Doc. 41-23; Doc. 41-22 at 2. Notably, Plaintiff does not dispute that she was under the influence of drugs – albeit prescription drugs – and that she "was very slow, messed up orders, and was incoherent" on the day she was fired. Doc. 51 at ¶ 51.

Pretext may also be demonstrated by departures from normal procedures, but Plaintiff does not argue that Miesel misapplied or misinterpreted Chipotle's Drug and Alcohol Policy. *Cf. Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination."); *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 683 (5th Cir. 2013) (explaining that the defendant's "interpretation of its policy is probably the correct one; it is certainly not so unreasonable as to invite any inference of pretext in the reason it gave for [plaintiff's] termination"). For instance, the policy provides that when an employee "must use medically prescribed or over-the-counter drugs that may adversely affect their ability to perform work in a safe manner," the employee "notify their Manager prior to starting work," which triggers

16

the Manager's duty to order work restrictions or a leave of absence.  Doc. 41-22 at 2.  Plaintiff

does not assert that she advised Miesel about her use of Saphris prior to starting work.[4]

Further, Plaintiff does not contend that Chipotle's policy lacked legitimate, job-related

goals, such as promoting employee safety and minimizing potential liability.  *See* Doc. 41-22 at 1

("Chipotle is committed to a safe, healthy, and productive work environment . . . . Abuse of

alcohol, drugs, and controlled substances impairs employee judgment, resulting in faulty decision-

making and increased safety risks and injuries.").  Plaintiff makes no effort to demonstrate that the

policy was applied more leniently to non-disabled employees, and she does not claim that non-

disabled employees were treated more favorably as a general rule.  In fact, Plaintiff reported that

she was being "watched carefully for a promotion" shortly before her termination.  Pl. Dep. at 152.

The only arguably negative behavior Plaintiff identifies on Miesel's part is that, upon

receiving the fax requesting FMLA leave, he pulled it out of the printer, laughed, and threw it

away without reading it.  Pl. Dep. at 86-87.  Plaintiff testified that she did not know why Miesel

reacted in this manner, but speculated that he was "probably having a bad day."  *Id.* at 87.  Taking

the available inferences in Plaintiff's favor, Miesel's behavior was dismissive and discourteous.

However, Plaintiff agrees that Miesel allowed her to take all of the leave she requested, and rude

treatment, by itself, will not support an inference of discriminatory animus.  Pl. Dep. at 106; *Barber*

*v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 798 (8th Cir. 2011).  The Court therefore finds

---

[4] If Plaintiff wished to directly challenge the denial of a request for accommodation under the
policy (or otherwise), the proper avenue would have been pursuant to a failure-to-accommodate
claim.  Although Plaintiff references a "failure to accommodate" in the opening section of her brief
(Doc. 45 at 4), that claim is not pleaded in the Amended Complaint, and she does not maintain that
the specific elements of a failure-to-accommodate claim are established.  *See, e.g., Holly*, 492 F.3d
at 1262-63 & n.17; *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010).  If
Plaintiff wished to argue that Chipotle's policy disproportionately affected disabled persons, her
proper challenge would have been pursuant to a disparate-impact claim, which she also has not
pleaded or argued.  *Raytheon*, 540 U.S. at 52-55.

that Miesel's reaction to Plaintiff's FMLA leave request does not demonstrate "significant probative evidence" of Miesel's intent to discriminate on the basis of Plaintiff's bipolar disorder. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (internal quotation marks omitted).

As frequently observed, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotation marks and alteration omitted). "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). While Plaintiff may well have been fired because of conduct related to medication side effects, that fact is not sufficient to demonstrate disparate treatment based on Plaintiff's disability. *Ray*, 264 F. Supp. 2d at1228-29; *Raytheon Co.*, 540 U.S. at 55 n.6. Chipotle's motion for summary judgment is therefore granted as to Counts III and IV of the Amended Complaint.

## IV.    CONCLUSION

As no genuine issues of material fat exist, Chipotle is entitled to summary judgment in its favor on all claims. Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)    Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**;

(2)    The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant, terminate any pending motions, and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on May 27, 2016.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

18

Copies to:
Counsel of Record